UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER M. V.,[1]

                             Plaintiff,

v.                                                               1:19-cv-01500 (JJM)

COMMISSIONER OF SOCIAL SECURITY,

                                 Defendant.

**DECISION AND ORDER**

_____

        This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff was not entitled to disability insurance benefits ("DIB") for the period September 30, 2015 to December 31, 2017. Before the court are the parties' cross-motions for judgment on the pleadings [11, 16].[2] The parties have consented to my jurisdiction [12]. Having reviewed the parties' submissions [11, 16, 17], this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

**BACKGROUND**

        The parties' familiarity with the 1,821-page administrative record ([4], [4-1], [4-2], and [4-3], (collectively, the "Administrative Record"[3]) is presumed. Plaintiff filed an

---

[1]    In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]    Bracketed references are to CM/ECF docket entries. Unless otherwise indicated, page references are to CM/ECF pagination (upper right corner of the page).

[3]    Page references to the Administrative Record refer to the page numbers reflected in the Administrative Record itself (bottom right corner of the page).

application for DIB on October 26, 2018. Administrative Record, p. 15.  He alleged a disability beginning on September 30, 2015.  Id.

Plaintiff's claim was initially denied.  Id.  An administrative hearing was held on February 11, 2019.  See id., pp. 19-79 (transcript of hearing).  Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") April M. Wexler.  See id.  On September 20, 2019, ALJ Wexler issued a decision finding that plaintiff "was not under a disability, as defined in the social Security Act, at any time from September 30, 2015, the alleged onset date, through December 31, 2017, the date last insured".  Id., p. 24. Following an unsuccessful request for review with the Appeals Council (id., pp. 1-6), plaintiff initiated this action.

## A.     ALJ Wexler's Decision

ALJ Wexler found that plaintiff's severe impairments were "posttraumatic stress disorder [PTSD], depressive disorder, personality disorder, lumbar spine spondylosis and left shoulder labral tear status post-surgery".[4]  Id., p. 26.  ALJ Wexler found that plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with additional limitations:

> "claimant has the residual functional capacity to perform sedentary work . . . except the claimant could occasionally reach in all directions and occasionally push or pull with the non-dominant left arm.  The claimant could never climb ladders, ropes or scaffolds.  The claimant can could [sic] occasionally crouch and frequently stoop, kneel and crawl.  The claimant could have no exposure to unprotected heights and occasional exposure to moving, mechanical parts.  The claimant could frequently operate foot controls.  The claimant was limited to simple, routine, repetitive tasks and simple, work related judgments and decisions.  He could understand, remember and carry out only short and simple instructions, and could have no more than occasional changes in a routine work setting.  The claimant could perform goal oriented

---

[4]     At Step 3 of the analysis, ALJ Wexler found that the plaintiff's impairments "did not meet or medically equal the criteria of listings 12.04, 12.08, and 12.15." Administrative Record, p. 18.  Plaintiff contends that he meets the criteria of listing 12.15.  See Plaintiff's Memorandum of Law [11-1], pp. 11, 17-18.

>work, but not fast paced work.  He was limited to occasional
>interaction with co-workers and supervisors but no interaction with
>members of the general public."

Id., p. 19.

To support the non-exertional limitations in her RFC findings,[5] ALJ Wexler outlined some of the evidence contained within over 1,450 pages of medical records (id., pp. 19-23).  She considered opinions concerning plaintiff's non-exertional limitations from:  plaintiff's treating Licensed Clinical Social Worker, Lauren Conley (id., pp. 1818-1821); consultative examiner Susan Santarpia, Ph.D (id., pp. 1758-1766); and State agency psychological consultants (id., pp. 80-85, 533-538).

## ANALYSIS

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).  It is well settled that an adjudicator determining a claim for DIB and/or SSI employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five.  See Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

---

[5]     Plaintiff does not challenge the exertional RFC findings.

B.      **Dr. Reynolds' Opinion Regarding Mental Health Limitations**

Plaintiff argues that the ALJ erred when she failed to evaluate an October 20, 2017 PTSD disability benefits questionnaire completed by William A. Reynolds, Psychologist for the Veterans Administration (the "VA") in connection with a compensation and pension ("C & P") examination to determine plaintiff's entitlement to veteran's benefits. Plaintiff's Memorandum of Law [11-1], pp. 1, 12-14; *see also* Administrative Record, pp. 402-408 (Dr. Reynolds' PTSD Disability Benefits Questionnaire). I agree, and therefore remand this matter for further proceedings.

Dr. Reynolds' October 20, 2017 report is based upon his examination of the plaintiff in addition to his review of the plaintiff's VA records. Administrative Record, pp. 404-405. Dr. Reynolds identified the plaintiff's primary mental health diagnoses of PTSD and Major Depressive Disorder ("MDD"). Id., p. 403. He opined that, with regard to all plaintiff's mental diagnoses, plaintiff suffered from a "total occupational and social impairment". Id., p. 404. In his opinion, plaintiff's PTSD caused a "major impairment in social and occupational functioning as well as in judgment and mood" and plaintiff's MDD caused a "serious impairment in social and occupational functioning". Id., p. 404. Dr. Reynolds outlined his clinical findings and identified the criteria outlined in the Diagnostic and Statistical Manual of Mental Disorders, 5th edition (the "DSM-5") that he used to make his PTSD diagnosis. Id., pp. 405-407. Dr. Reynolds checked boxes to indicate the plaintiff's symptoms, several of which illustrate functional limitations relevant to plaintiff's ability to work, such as: "[m]ild memory loss, such as forgetting names, directions or recent events"; "[i]mpairment of short- and long- term memory, for example, retention of only highly learned material, while forgetting to complete tasks" :

```
4. Symptoms
-----------
For VA rating purposes, check all symptoms that actively apply to the
Veteran's diagnoses:

   [X] Depressed mood
   [X] Anxiety
   [X] Suspiciousness
   [X] Chronic sleep impairment
   [X] Mild memory loss, such as forgetting names, directions or recent
       events
   [X] Impairment of short- and long-term memory, for example, retention of
       only highly learned material, while forgetting to complete tasks
   [X] Disturbances of motivation and mood
   [X] Difficulty in establishing and maintaining effective work and social
       relationships
   [X] Difficulty in adapting to stressful circumstances, including work or a
       worklike setting
   [X] Suicidal ideation
```

Id., p. 407. Finally, under the "Remarks" section of his assessment, Dr. Reynolds made conclusions concerning plaintiff's ability to work, which included several statements concerning plaintiff's functional abilities and limitations:

```
8. Remarks, (including any testing results) if any:
---------------------------------------------------
   Based upon the records examined, the veteran's self-report, relevant
   literature, and the training and experience of this examiner, it is the
   opinion of this examiner that this veteran would be unable to secure and
   maintain substantially gainful employment in his normal occupational
   environment, regardless of the physical or sedentary aspects of a given
   job, primarily due to persistent PTSD symptoms, per DSM-5 diagnostic
   guidelines, of increased arousal (such as irritability and difficulty
   concentrating) as well as an avoidance of stimuli associated with his
   traumatic experiences (avoiding conversations, interpersonal interactions,
   crowds) and a numbing of general responsiveness (being detached and having
   a restricted range of affect). These functional limitations would impact
   the veteran's ability to engage in professional and effective
   interpersonal interactions and he could be experienced by superiors,
   co-workers, or customers as hostile at worst or aloof or disinterested at
   best; it would also undermine the quality of his productivity. These
   functional limitations could also result in avoidant behavior that could
   ultimately significantly affect attendance to scheduled work shifts.
```

Id., p. 408.

**C.      Did ALJ Wexler Err by Failing to Consider Dr. Reynolds' Report?**

An ALJ's review of medical evidence in a claimant's file, for claims filed on or after March 27, 2017, is governed by 20 C.F.R. § 404.1520c, entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after

-5-

March 27, 2017". Under this new regulation, "the Commissioner must consider all medical opinions and 'evaluate their persuasiveness' based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and 'other factors'". Andrew v. Commissioner, 2020 WL 5848776, *5 (N.D.N.Y. 2020) (quoting 20 C.F.R. § 404.1520c(a)-(c)). The definition of a "medical opinion" for claims filed on or after March 27, 2017 is:

> "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . . (ii) [y]our ability to perform the mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting".

20 C.F.R. § 404.1513(a)(2).

The Commissioner argues that ALJ Wexler was not required to acknowledge Dr. Reynolds' report because "it contains no useful statement about what [p]laintiff 'can still do' despite his impairments". Commissioner's Brief [16-1], p. 15. Moreover, "to the extent that Dr. Reynolds assessed symptoms that affect interpersonal interactions, the ALJ appropriately accounted for any related limitations by restricting Plaintiff to no more than occasional interactions with coworkers and supervisors and no interactions with the public". Id.

I do not agree. First, Dr. Reynolds examined the plaintiff and authored his report two months prior to the plaintiff's date last insured. Second, Dr. Reynolds' assessment relates to two of the same conditions that ALJ Wexler determined were severe impairments: PTSD and MDD. See Administrative Record, p. 17. Dr. Reynolds notes in his report that plaintiff's PTSD "is a progression of a service connected PTSD that has worsened since the last exam"[6] and that

---

[6] Elsewhere in his report, Dr. Reynolds identifies the last relevant examination as that of Dr. Sandra Jensen, also performed within the relevant period, on July 27, 2016. Administrative Record, p. 405. Dr. Jensen's report appears in the Administrative Record at pp. 1470-1476. Although not

plaintiff's MDD "is a new diagnosis and represents a worsening in his presentation" that was "more likely than not, aggravated by the impact of the PTSD on the veteran's lifestyle". Administrative Record, p. 403.  Dr. Reynolds' "[r]emarks" incorporated into his report contain several statements that assess plaintiff's functional abilities related to work.  For example, Dr. Reynolds states that plaintiff's "persistent PTSD symptoms", include "increased arousal" marked by "irritability and difficulty concentrating", "avoidance of stimuli associated with his traumatic experiences" marked by "avoiding conversations, interpersonal interactions, crowds", and "a numbing of general responsiveness" marked by "being detached and having a restricted range of affect".  Administrative Record, p. 408.

In his very next sentence, Dr. Reynolds refers to these PTSD symptoms as "functional limitations" which "would impact [plaintiff's] ability to engage in professional and effective interpersonal interactions", "undermine the quality of his productivity", and "affect attendance".  ALJ Wexler's failure to discuss, or even acknowledge, Dr. Reynolds' functional assessment was legal error:

> "In this case, the ALJ failed to even discuss Dr. Reynolds' opinion; moreover, the ALJ failed to weigh other psychological opinion evidence in the record, including opinions from consulting examining psychologists Drs. Sandra Jensen and Carol Descutner. The ALJ erred in failing to weigh these opinions . . . Moreover, this error was not harmless, because the limitations opined in Dr. Reynolds' opinion were quite restrictive and could have resulted in a finding of disability-or at the very least a more restrictive RFC finding- if given weight by the ALJ."

Lewis v. Colvin, 2017 WL 2703656, *2 (W.D.N.Y. 2017).

Although ALJ Wexler is not required to credit Dr. Reynolds' statement that the plaintiff is "unable to . . . maintain substantially gainful employment", 20 C.F.R. §

---

mentioned by the plaintiff in his papers, ALJ Wexler also did not consider Dr. Jensen's report in her analysis.

404.1520b(c)(3), she is not free to simply ignore Dr. Reynolds' assessment in its entirety.  *See* Stack v. Commissioner, 2020 WL 5494494, *4-6 (W.D.N.Y. 2020) (finding that, although not required to accept the VA's determination of disability, the ALJ nonetheless "committed legal error in failing to address the functional assessments from the C & P examination[]" of Dr. Reynolds).

Because remand is necessary, I do not reach plaintiff's remaining arguments.  *See* Stack, 2020 WL 5494494, *6 ("[b]ecause the Court has determined that remand is warranted on this basis, it need not reach plaintiff's remaining arguments").  To do so here would be premature, as the ALJ's consideration of Dr. Reynolds' (and Dr. Jensen's) assessment may impact her conclusions at step 3 of her analysis concerning whether the plaintiff's impairments meet the criteria of listing 12.15 (*see* Plaintiff's Memorandum of Law, pp. 11, 17-18), and in determining the plaintiff's RFC, including whether the remaining opinion evidence and the plaintiff's testimony is consistent with the record as a whole.

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [11] is granted to the extent that this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order, and is otherwise denied.  Accordingly, the Commissioner's motion for judgment on the pleadings [16] is also denied.

**SO ORDERED**.

Dated: March 3, 2021

                                       /s/ Jeremiah J. McCarthy
                                       JEREMIAH J. MCCARTHY
                                       United States Magistrate Judge